UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CHRISTOPHER YOUNG,
        Plaintiff,

        v.                                 C.A. No. 12-937-ML

BROWN UNIVERSITY,
THROUGH ITS PRESIDENT, CHRISTINA
PAXSON, AND FORMER PRESIDENT,
RUTH SIMMONS

EDWARD WING

MARISA QUINN

PAUL SHANLEY;
BROWN UNIVERSITY POLICE
OFFICERS, JOHN DOES,
        Defendants.

**MEMORANDUM OF DECISION**

The plaintiff, Christopher Young ("Young"), filed claims against Brown University ("Brown") and Deputy Chief of Brown's Department of Public Safety, Paul Shanley ("Officer Shanley," together with Brown, the "Defendants")[1] after Brown campus police officers removed Young from the Brown campus for his disruptive behavior during a public forum on health care reform. Young alleged that the removal and subsequent arrest by the Providence Police Department ("PPD") occurred in violation of his constitutional rights (Count I); that he was subjected to an

---

[1] On April 10, 2014, by stipulation, all claims against the other named defendants were dismissed with prejudice. (Dkt. No. 36).

1

unreasonable seizure by Officer Shanley, as a result of which Young suffered bodily injuries and mental anguish (Count II); and that Young was unlawfully detained by Officer Shanley (Count XII). In addition, Young sought an injunction against a Notice Not to Trespass (the "No Trespass Notice") issued to him by Brown, which prohibits him from entering the Brown campus and any building and property owned or leased by Brown (Count X). Following an extended discovery period, the parties agreed to a trial without a jury, which was conducted before this Court on October 6, 2014. The matter before the Court in this case is the Defendants' motion for judgment on partial findings pursuant to Fed. R. Civ. P. 52(c).

## I. Procedural History

On November 29, 2012, three years after Young was removed from Andrews Hall on the Brown campus where he and his wife had attended a roundtable lecture on health care reform, he filed a *pro se* complaint (the "Complaint") against the Defendants in Rhode Island state court. On December 21, 2012, the Defendants removed the case to this Court on the grounds of federal question jurisdiction (Dkt. No. 1-1). Young filed an objection to the removal on January 4, 2013 (Dkt. No. 6) and urged the Court to abstain from the matter on January 22, 2013. (Dkt. No. 11). As of February 4, 2013, Young was represented by counsel (Dkt. No. 14).

Young's motion to remand the case was denied on March 18, 2013 (Text Order), after which the parties engaged in discovery. Factual discovery, which was extended on Young's motion for an additional six months, closed on April 30, 2014. (Dkt. Entry September 3, 2013). On March 26, 2014, the Defendants filed a motion to dismiss the Complaint. (Dkt. No. 24). On April 4, 2014, Young sought to amend his Complaint (Dkt. Nos. 31, 32); his motion to amend was denied (Text Order April 9, 2014)[2].

On April 9, 2014, all claims against named defendants other than Brown and Officer Shanley were dismissed, (Dkt. Nos. 35, 36), as were Counts III, IV, X, XIII, XIII, leaving Counts I, II, XI, XII, and X.[3]

On August 14, 2014, Officer Shanley filed a motion for summary judgment (Dkt. Nos. 51, 52), to which Young responded with an objection on August 26, 2014. (Dkt. Nos. 54-56). The Court informed the parties on September 4, 2014 that the case would be set for trial to commence on October 6, 2014. (Dkt. No. 59).

With the waiver of a jury by both sides, trial without a

---

[2] Young sought to include several Brown police officers named as "John Does" in his Complaint.

[3] The ten-count complaint was improperly numbered, resulting in duplication of Counts X and XIII. There are no Counts numbered V-IX.

jury was held on October 6, 2014. Young and his wife Kara gave testimony. By stipulation, the parties entered Exhibits 1-7, which included a DVD with video footage taken by Young and his wife at the Brown lecture. Ex. 2. Defendants offered an additional videotape, a small portion of which—showing a scene from the same event from a different perspective—was admitted into evidence. Ex. A. Because Young's only remaining witness was acknowledged to address only the question of damages, not liability, Defendants made a motion for judgment on partial findings pursuant to Rule 52(c) of the Federal Rules of Civil procedure. The Court took the motion under advisement and instructed the parties to submit supplemental briefs as to Count X of the Complaint, related to Brown's No Trespass Notice. Count XI was voluntarily dismissed by Young at the conclusion of trial.

**II. Standard of Review**

Pursuant to Fed. R. Civ. P. 52(c), a Court may render judgment on partial findings "[i]f a party has been fully heard on an issue during a nonjury trial;" however, the Court may decline to do so "until the close of the evidence." Fed. R. Civ. P. 52(c). Judgment under Rule 52(c) is indicated "[w]hen a party has finished presenting evidence and that evidence is deemed by the trier insufficient to sustain the party's position." <u>Morales Feliciano v. Rullan</u>, 378 F.3d 42, 59 (1st Cir.2004). In

determining whether judgment pursuant to Rule 52(c) is appropriate, the Court "need not consider the evidence in a light favorable to the plaintiff and may render judgment for the defendant if it believes the plaintiff's evidence is insufficient to make out a claim." Geddes v. Northwest Missouri State Univ., 49 F.3d 426, 429 n. 7 (8th Cir.1995). The Court is tasked with resolving any conflicts in the evidence and "'decide for itself where the preponderance lies.'" Morales Feliciano v. Rullan, 378 F.3d at 59 (citing 9C Wright & Miller Fed. Prac. & Proc. Civ. § 2573.1, at 497–99).

The following constitutes the Court's findings of facts and conclusions of law after considering all the testimony and evidence introduced by the parties in the course of the plaintiff's case.

**III. Findings of Fact**

The events leading to Young's removal from the November 30, 2009 lecture at Brown are documented in the video footage taken by Kara Young (Ex. 2); the videotape submitted by the Defendants (Ex. A); and six separate incident reports written by Brown police officers following the event (Ex. 1). For the most part, the sequence of events was also confirmed by Young's own testimony.

On November 30, 2009, Young and his wife Kara attended a

lecture of a roundtable series on health care reform, taking place at Andrews Hall on the Brown Campus. (Ex. 4). The Youngs carried two large homemade signs—"No Abortion Funding" and "Abortion = Murder"—which they intended to bring into the lecture hall. They were told by Officer Shanley and a Brown administrator that, under Brown policy, no signs were allowed because they could obstruct the view of other audience members and because the signs constituted a fire hazard. Young and his wife were permitted to enter after they placed the signs in a corner. Shortly after entering the room in which the discussion was already ongoing, Young received a call on his cell phone and continued to talk until he was told to end the call or leave. Young began video taping Congressman Kennedy and various members of the audience. Young then handed his wife the video camera so he could take his turn at the microphone that was set up in the middle of the room for audience participation.

As soon as Young stepped up to the microphone, he began a long, rambling narrative in which he stated, *inter alia*, that health care reform was a subsidy of the pharmaceutical industry; that he could not agree to fund abortion; that birth control activists like Margaret Sanger were eugenicists; and that the intent of forming Planned Parenthood was to bring about ethnic cleansing. On the videotape taken by Kara Young, members of the

6

audience can be observed shaking their heads and beginning to grumble at Young's remarks; at least one audience member called Young's remarks "slanderous." Young responded by addressing the audience directly, stating that the event was a public forum and that he should be permitted to ask a question. He then raised a DVD case that he had been holding in his hand and explained that the DVD contained a film on genocide he wished to give to then U.S. Representative Patrick Kennedy, one of the members on the forum panel. Young stepped away from the microphone and approached the panel, flinging the DVD onto the table in front of Representative Kennedy.

Young then returned to the microphone and continued his monologue. Marisa Quinn, Vice President of Brown Public Affairs asked Young to finish up and step back from the microphone, after which two uniformed officers approached Young, who continued to repeat his prior allegations. According to Young's testimony, Dr. Edward Wing ("Dr. Wing"), Dean of Medicine and Biological Sciences, also told Young to "end this discussion."

As documented on the Youngs' videotape, one Brown police officer—identified by Young as Officer Vinacco—touched Young on his right elbow, turned the microphone away from him, and encouraged the next questioner behind Young to take her place at the microphone. Undeterred, Young continued his narrative in a

7

louder voice, at which point three uniformed officers tried to guide him towards the back of the hall. Young then began to shout loudly: "This is not a free country anymore," and continued to resist the officers' attempts to move him.

At this point, there is a gap in the videotape (Ex. 2),[4] after which the camera appears to be swinging around in various directions while Young is heard screaming in the background. Young was moved by officers into a vestibule area where he was placed on the floor and handcuffed.

After Young had been handcuffed, he was lifted up, removed from the building and brought to the PPD station by patrol car. According to Young, he was finger-printed and kept in a cell for several hours, after which he was released on personal recognizance. Young was charged with disorderly conduct, but the charge was later dismissed. The day after the forum, Dr. Wing issued a witness statement in which he acknowledged that the Brown police officers removed Young at his request after Young had asked inappropriate questions of Congressman Kennedy. Dr. Wing also noted that he had asked Young repeatedly to "wrap up" and that he had given Young, at first, a 15-second and then a 10-second deadline for concluding his remarks. Ex. 1.

---

[4] According to Kara Young, she briefly stopped recording because she was afraid she'd run out of tape.

In December 2009, Young received a written notice from Brown which informed him that he was forbidden from entering the Brown campus. (Ex. 3). The notice, dated December 4, 2009, reads as follows:

NOTICE NOT TO TRESPASS
RI STATE STATUTE 11-44-26

> On November 30, 2009, you were arrested on the property of Brown University and charged with disorderly conduct. Based on that arrest, and in accordance with the provisions of Rhode Island General Law 11-44-26 and 11-44-26.1, this letter is official notice that you are hereby forbidden from entering the campus of Brown University. <u>This prohibition includes any Brown University building and property owned or leased by Brown University.</u> Be advised, that pursuant to Rhode Island General Law 11-44-26 and 11-44-26.1, any violation of this warning will result in you being subject to arrest.
>
> It is our sincere hope that you will respect the rights of the University in this matter. Be assured that we will take all appropriate legal action if you choose to disregard this notice. (Emphasis added). Ex. 3.

On March 16, 2010, Young—who has been campaigning for various public offices since 2000, including mayor of Providence—was standing outside the Brown bookstore on Thayer Street, where he was handing out pro-life literature. Young was approached by an officer of the Brown police department who informed Young that if he stood on the portion of the sidewalk that was owned by Brown, Young would be arrested under the No Trespass Notice. According to Young, there was no clear indication which part of

the sidewalk was public and which part belonged to Brown. Following this incident, Young conducted some research and determined that Brown owned or leased a large number of properties. Young explained that he had planned to distribute pamphlets all over Brown's campus and to canvass door-to-door for signatures in order to be placed on the ballot. According to Young, following this incident he discontinued campaigning in the campus area because he was "terrified to go to a [Brown] building and get arrested."

**IV. Discussion**

**A. § 1983 Claim - Deprivation of Constitutional Rights (Count I)**

Young generally alleges that he was discriminated against by Brown because he was not allowed to share his Catholic viewpoint at the November 30, 2009 forum. 42 U.S.C. § 1983 "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place under color of any statute, ordinance, regulation, custom, or usage, of any State...." Rockwell v. Cape Cod Hospital, 26 F.3d 254, 256 (1994) (internal quotation marks and citation omitted). A plaintiff seeking to maintain an action under Section 1983 must establish two elements by a preponderance of the evidence: (1) the deprivation of a right or privilege secured by the

Constitution or laws of the United States, and (2) that the deprivation occurred under color of state law. <u>Flagg Brothers, Inc. v. Brooks</u>, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732-33, 56 L.Ed.2d 185 (1978). An action may be dismissed if the plaintiff fails to satisfy either necessary element. <u>Id.</u> at 166, 98 S.Ct. at 1738-39.

Whether Brown qualifies as a "person" acting under color of state law within the meaning of "constitutional guarantees," is a question currently before the First Circuit Court of Appeals. <u>See</u> <u>Klunder v. Brown University</u>, C.A. No. 10-410-ML Slip Op., (D.R.I. July 13, 2011), 2011 WL 2790178. As noted by this Court in <u>Klunder</u>, "[p]rivate parties and 'private institutions meet the state action requirements only in rare circumstances.'" <u>Klunder</u>, 2011 WL 2790178 (quoting <u>Rinsky v. Trustees of Boston University</u>, Civil Action No. 10cv10779-NG, 2010 WL 5437289 (D.Mass. Dec. 27, 2010)). "'In order for a private actor to be deemed to have acted under color of state law, it is not enough to show that the private actor performed a public function. The plaintiff must show that the private [actor] assumed powers traditionally *exclusively* reserved to the State.'" <u>Klunder</u>, 2011 WL 2790178 at *5 (quoting <u>Rockwell</u>, 26 F.3d at 258).

Assuming, without deciding, that the Brown police force can act under the color of state law, Young's Section 1983 claim

11

nevertheless fails because he did not establish the second necessary prong: that Brown deprived him of a constitutionally guaranteed right. Young was given an opportunity to pose a question to the panel and he was allowed, without interruption, to speak at some length. As is evident from the Youngs' videotape, Young never asked a question, he merely voiced his personal disagreements with certain aspects of health care reform as he understood them; he approached the panel members and threw a DVD onto the panel table; he began arguing with members from the audience; and on the whole, he conducted himself in a disruptive manner. As Young acknowledged at trial, members of the audience yelled at him, interrupted his speech, and began booing him. Young was led away from the microphone at the request of Dr. Wing, Brown's Dean of Medicine and Biological Sciences, only after Young's conduct became increasingly disruptive and after Young had been given two opportunities to finish his statement. Young still refused to yield the microphone and, as he was guided towards the back of the room, he began to shout at an ever increasing volume. The videotape excerpt introduced by the Defendants, see Ex. A, clearly shows that, notwithstanding the testimony given by Young and his wife, Young did not "backpedal;" rather, he resisted the efforts of the Brown officers to lead him away by pushing his body forward and straining against the

12

officers' hold on him.

In sum, Young made no showing that Brown violated his constitutional rights or that the action of Brown police officers was based on the content of Young's remarks. Rather, Young was allowed to share his views until he became repetitive and disruptive and he failed to cede the microphone after having been asked to do so. Under those circumstances, the Court finds that Young's allegation of unconstitutional discrimination is entirely unsupported.

**B. Excessive Force (Count II)**

Young alleges that he was subjected to an unreasonable physical seizure by Brown Officer Shanley. The standard for establishing excessive force is a rigorous one, requiring a plaintiff to show "(1) significant injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." Reese v. Anderson, 926 F.2d 494, 500 (5th Cir.1991). "Whether the force used to effect a particular seizure is reasonable 'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Jennings v. Jones, 499 F.3d 2, 11 (1st Cir. 2007)(quoting Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

Although the narratives in the officers' incident reports, see Ex. 1, contain some minute variations, the reports are generally consistent with one another and with the two videotapes submitted by the parties. As such, neither the reports nor the videotapes support Young's version of the events.

Young insisted at trial that his legs were pulled out from under him, whereas several of the incident reports state that Young "lowered his weight in a pro-test [sic] manner," and that Young "became passive and fell to the floor . . . forcing the officers to carry him from the building." (Ex. 1, Reports of Officers Remka and Pereira). Neither videotape shows how Young eventually came to rest on the floor, nor do the videotapes confirm Young's assertion that he was grabbed and/or that his balance was deliberately offset by the officers. As Young himself acknowledged, he had general difficulties maintaining his balance because of his considerable weight. Young contended at trial that he was "backpedaling" as officers attempted to remove him from the forum; however, the second videotape of the event, see Ex. A, shows very clearly that Young was resisting the officers and that he was pushing his body forward in order to remain on the premises.

Moreover, from the events shown on the videotapes and related in Young's own testimony, it is not clear whether Officer

Shanley ever touched Young. According to Young's testimony, as he was standing at the microphone, he was approached by Officers O'Connor, Remka, and Vinacco, who later removed the microphone. Young also stated that Officer O'Connor grabbed his arm and offset his balance and that Officer Shanley had his hands on Young <u>after</u> his legs had been pulled out from under him. Notwithstanding Young's insistence that Officer Shanley "touched" him at some point during Young's removal from the hall, Young made no allegations that Officer Shanley used excessive force, nor do the submitted videotapes provide evidence to support such an allegation. In sum, Young's claim of excessive force on the part of Officer Shanley was entirely unsupported.

### C. False Imprisonment (Count XII)

Regarding the false imprisonment claim against Officer Shanley, Young alleges, without offering further details, that Officer Shanley unlawfully detained him. In order to recover on this claim, Young was required to establish that (1) Officer Shanley intended to confine him; (2) Young was conscious of the confinement; (3) Young did not consent to the confinement; and (4) the confinement was not otherwise privileged. <u>Beaudoin v. Levesque</u>, 697 A.2d 1065, 1067 (R.I. 1997). Young was also required to show that he was detained without legal justification. <u>Dyson v. City of Pawtucket</u>, 670 A.2d 233, 239

(R.I. 1996). See also Mailey v. Estate of De Pasquale, 177 A.2d 376, 379 (1962)("[t]he essential element of this tortious action is the restraint of another person without legal justification or without any color of legal authority").

It is undisputed that Officer Shanley and other members of the Brown police force were specifically requested by Dr. Wing, a member of the Brown faculty, to remove Young from the premises. The removal only occurred after Young began to disrupt the event with his conduct; after he had been told by Brown administrator Marisa Quinn to "wrap it up;" and after he had exhausted two additional deadlines for finishing his remarks. Young's disruptive conduct is shown on his wife's video recording, and his strenuous attempts to resist the Brown police officers' efforts to remove him from the premises are evident from the videotape excerpt that the Defendants introduced at trial. Under those circumstances, there was clearly probable cause to arrest Young for his refusal to leave the premises peacefully after he had been repeatedly requested to conclude his remarks; for his continuing and escalating disruption of the event; and for his resistance to Brown police officers' efforts to remove him from the lecture hall. Accordingly, Young failed to establish that he was detained without legal justification.

## Conclusion

After considering the testimony given by Young and his wife and reviewing all the evidence submitted by the parties, the Court finds that Young has failed to carry his burden to show, by a preponderance of the evidence, that his constitutional rights were violated by Brown or that Officer Shanley subjected him to excessive force and/or false imprisonment. For all those reasons, the Defendants' motion for judgment on partial findings is GRANTED, in part, and DENIED, in part. The motion is granted with respect to Counts I, II, and XII. With respect to Count X, the Defendants' motion is denied, pending additional fact finding by this Court at trial.

SO ORDERED.

/s/ Mary M. Lisi

Mary M. Lisi
United States District Judge
October 22, 2014